WALLACE, Judge.
In these consolidated cases, Mary Ann Marks challenges two nonfinal orders entered after a final judgment of partition by sale of property owned by her and by Stefan V. Stein, as the personal representative of the estate of Ms. Marks’ sister. The effect of the two nonfinal orders was to abrogate the provisions of the earlier partition judgment, which had granted the parties approximately six and one-half months to negotiate a private sale of the property before resorting to a judicial sale in accordance with chapter 64, Florida Statutes (2013), regarding partition of property. Because the two postjudgment orders altered the provisions of the partition judgment by imposing an expedited bidding scheme that was neither stipulated to by the parties nor authorized by chapter 64, we reverse.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
The course of the proceedings in the underlying partition action is unusual; therefore, we recount the procedural background in some detail. Ms. Marks brought the partition action in the trial court against her sister, Janet C. Stein. Ms. Stein died during the pendency of the proceedings. Her husband, Mr. Stein, was appointed as the personal representative of her estate, and the trial court substituted him as a party.
The property at issue is a four-bedroom, single-family residence located in the Pelican Island development on Old Tampa Bay in Hillsborough County. The residence was the home of the sisters’ parents; title to the property was in a family trust. The sisters’ mother died in 2005, and Ms. Marks became the sole trustee of the trust. She and Ms. Stein were the.only beneficiaries of the trust. In 2008, Ms. Marks deeded the property to herself and to Ms. Stein as tenants in common. As a result, each sister owned an undivided, one-half interest in the property in fee simple. After disagreements arose between the sisters regarding the potential sale of the property, Ms. Marks filed the underlying action. In her complaint for partition, Ms. Marks alleged that the property was “not reasonably susceptible to an equitable physical division” due to certain improvements, and Ms. Stein admitted this *504 allegation in her answer. No one contended that the property should have been partitioned in kind rather than by sale.
Eventually, Ms. Marks moved for summary judgment. On December 13, 2013, the trial court granted Ms. Marks’ motion in part and entered a judgment ordering partition of the property by sale. In pertinent part, the partition judgment provided as follows:
2. The property is indivisible and cannot be partitioned in kind.
3. The Plaintiff and the Defendant shall engage [a named appraiser] to perform a real estate appraisal (“Appraisal”) determining the market value of the residence (the “Property”)....
4. Plaintiff and Defendant shall both advance one-half of the cost of the Appraisal.
5. The parties shall engage [a named real estate sales person], a real estate agent ... in Tampa, Florida, to list the Property for sale at the price specified in the Appraisal for a period up to and including June 30, 2014. The Parties may list the property “As Is”.
6. If a sale of the Property is concluded on or before June 30, 2014, the net proceeds shall be deposited with the Court to await disposition by the Court pursuant to Section 64.071, Florida Statutes (2013).
7. If a sale of the Property is not concluded on or before June 30, 2014, the Court shall enter an Order requiring the sale of the Property at a public auction pursuant to Section 64.071, Florida Statutes (2013).
8. The Parties may move to reset the judicial sale identified in paragraph 7 of this order if exceptional circumstances present themselves for doing so.
9. Either Party may make an offer at any time to purchase the other Party’s interest.
10. If during the Listing Period, any offers to purchase the property are received whereby one party wishes to accept the offer but the other party does not, the parties may seek emergency relief of the Court wherein the Court shall decide whether the offer is reasonable and viable under the circumstance[s] and whether or not to accept the offer.
11. The Court retains jurisdiction to enter orders necessary to enforce this Judgment and the equitable distribution of sale proceeds and any award of costs and attorney’s fees.
Thus the final judgment gave the parties approximately six and one-half months to negotiate a private sale of the property.
After the entry of the judgment for partition, the parties obtained an appraisal from the named appraiser in accordance with paragraphs three and four. The appraiser valued the property in December 2013 at $450,000. Ms. Marks signed a listing agreement with the real estate agent. However, the property was never listed as required by paragraph five of the judgment. Instead of signing the listing agreement, Mr. Stein made an offer to buy Ms. Marks’ interest in the property. Ms. Marks made a counteroffer, Mr. Stein countered, and Ms. Marks countered again. Instead of asking the court to compel Mr. Stein to sign the listing agreement, Ms. Marks moved the court for emergency relief to approve her high offer to Mr. Stein. At a hearing held on Ms. Marks’ motion on January 7, 2014, Mr. Stein requested that the court order each of the parties to submit one sealed bid by a date certain. The court denied Ms. Marks’ motion and ruled that the parties would have until 5:00 p.m. on January 24, 2014, to *505 submit bids to buy the other party’s interest by filing written offers with the clerk of court.[1] On January 21, 2014, the court entered a written order memorializing its oral ruling. Ms. Marks moved to vacate the order, arguing that it improperly modified the judgment of partition. The court denied the motion.
Before five o’clock on January 24, 2014, Ms. Marks submitted an offer of $556,000 and Mr. Stein submitted an offer of $601,755.38. Mr. Stein moved for approval of his offer. On January 28, 2014, Ms. Marks filed a notice that an unrelated third party had made an offer in the amount of $656,100.50.
At a hearing on Mr. Stein’s motion on January 29, 2014, Ms. Marks argued that under the final judgment of partition, the parties had until June 30, 2014, to close a third-party sale of the property. In accordance with that judgment, Ms. Marks asserted, the court should find the third-party offer for $656,100.50 to be “reasonable and viable under the circumstances” and approve it. Mr. Stein countered that in accordance with the order issued on January 21, 2014, he had submitted the high bid by the court’s January 24 deadline. Therefore, Mr. Stein contended, his offer was “deemed accepted” and the property was already under contract when the third party made his offer. The court heard testimony from Ms. Marks and her husband to determine whether the offer for $656,100.50 was a bona fide third-party offer.
II. THE TRIAL COURT’S RULINGS
After hearing the parties’ arguments and the testimony of Mr. and Ms. Marks, the trial court made the following oral ruling:
We are not going to — it is not right to play the game forever because sometimes at a certain point you have to have a finale. Okay? If we didn’t have this offer on the table, I would apply the rules up until 5:00 o’clock, and the rule up until 5:00 o’clock your client was the highest bidder. But we do have another offer. It appears to be an independent, good faith offer. And under the rules, anybody from the outside was able to make an offer up to seven months. And it is still within that time period. I find that this is a viable offer. It is in excess, well in excess of the offer of both parties and I am going to accept it and that is the offer the court’s accepting.
Ms. Marks objected that the expedited bidding process imposed by the trial court was inconsistent with the partition statute and the case law governing the remedy of partition. Discounting this objection, the court further ruled that if the sale to the third-party offeror did not close within thirty days, Mr. Stein’s offer of $601,755.33 would be “deemed accepted.” On February 5, 2014, the trial court entered a written order memorializing its oral rulings.
At this point, the third party offeror withdrew his offer. Thus, in accordance with the February 5 order, Ms. Marks was “deemed” to have accepted Mr. Stein’s offer. Ms. Marks timely appealed the February 5 order in case number 2D14-1197.
On February 24, 2014, Ms. Marks filed a motion for reconsideration of the February 5 order. The trial court held a hearing on March 7, 2014, and entered an order on March 19, 2014, denying Ms. Marks’ motion. The tyiarch 19 order further directed that the transfer of Ms. Marks’ interest in the property to Mr. Stein be completed within thirty days. The trial court also required Mr. Stein to place the purchase *506 price in his attorney’s trust account. The court retained jurisdiction “to enforce ... the equitable distribution of sale proceeds.” Ms. Marks timely appealed the March 19 order in case number 2D14-1559.
To complete the purchase, Mr. Stein made the required deposit of $601,755.33 into his attorney’s trust account. On April 22, 2014, after Ms. Marks declined to execute the required deed, Mr. Stein moved the court to find Ms. Marks in contempt and to compel her to execute a quitclaim deed transferring the property to him. The trial court entered an order for Ms. Marks to appear on May 13, 2014, and to show cause why she should not be held in contempt for failure to' execute the quitclaim deed. At the hearing, the trial court ordered Ms. Marks to complete the transfer of the property. After renewing her objection, Ms. Marks complied, and the deed was recorded in Hillsborough County on May 15, 2014.
III. THE PARTIES’ ARGUMENTS AND THE ISSUE PRESENTED
On appeal, Ms. Marks argues that, according to the judgment of partition, the parties should have had until June 30, 2014, to negotiate a private sale among themselves or to a third party by listing the property for sale. She contends that the trial court erred by altering the judgment and imposing a procedure that prohibited a voluntary sale either on the open market or between the parties. .Ms. Marks argues that the trial court erred first when it issued its order on February 5, 2014, requiring her to accept Mr. Stem’s offer of $601,755.33, and again when it ordered her on March 19, 2014, to complete the transfer of the property to Mr. Stein within thirty days. Ms. Marks explains that an objective of a partition sale is to get the highest possible price for the parties, and the trial court thwarted this and prejudiced her when it forced her to sell her interest in the property to Mr. Stein at a price well below the property’s apparent market value and for less than even she was willing to pay for it. In support of her position, Ms. Marks points to the third-party offer of $656,100.50 made on January 28, 2014, as evidence that the property’s value was increasing rapidly during the time after the entry of the partition judgment and the subsequent appraisal.
In response, Mr. Stein argues that the trial court had the authority to modify the partition judgment to authorize the bidding process that was put in place. Mr. Stein contends that the bidding process could not have prejudiced Ms. Marks by forcing her to accept his offer — a price that was $150,000 more than the property’s appraised value.
Although Ms. Marks appeals two separate orders, the issue that we are called upon to decide in these consolidated cases is the same: Whether the trial court erred when it departed from the provisions in the earlier partition judgment and imposed an expedited bidding process that was neither stipulated to by the parties nor authorized by chapter 64, which governs actions for partition.
IV. DISCUSSION

A. Procedures for Partition by Sale

Actions for partition are based in equity and are governed by chapter 64, Florida Statutes (2013). § 64.011 (“All actions for partition are in chancery.”); Schroeder v. Lawhon, 922 So.2d 285, 292 (Fla. 2d DCA 2006). Once the trial court enters a judgment of partition by sale, “absent a contrary stipulation by [the] interested parties, partition should proceed under Chapter 64.” Carlsen v. Carlsen, *507 346 So.2d 132, 133 (Fla. 2d DCA 1977); see also Schroeder, 922 So.2d at 292. Where property to be partitioned is indivisible and subject to sale, there are three different procedures that may be available to a trial court for conducting a partition sale. A brief review of these three procedures will assist in our analysis of the issue presented.
Under section 64.061(4), where there is an uncontested allegation that the property is not divisible without prejudice to the owners and the court is satisfied that this' allegation is correct, it is unnecessary to appoint a commission to determine whether and how a partition in kind may be appropriate as set out in sections 64.061(1)-(3). § 64.061(4); see also Geraci v. Geraci, 963 So.2d 904, 907 (Fla. 2d DCA 2007). Instead, “on motion of any party and notice to the others the court may appoint a special magistrate or the clerk to make sale of the property either at private sale or as provided by [section] 64.071.” § 64.061(4). In turn, section 64.071 prescribes the guidelines for a judicial sale of indivisible property. The statute allows the trial court to' order indivisible property “to be sold at public auction to the highest bidder by the commissioners or the clerk” and requires that the money from the sale be “paid into the court to be divided among the parties in proportion to their interest.” § 64.071(1). Thus, under chapter 64, the trial court may either (1) order a private sale under the supervision of the clerk or a magistrate in accordance with section 64.061(4), or (2) order a judicial sale by public auction in accordance with section 64.071.
Alternatively, in Carlsen, this court approved a third option: a judicially sanctioned procedure for private sale in dissolution proceedings based on a stipulation of the parties. 346 So.2d at 133. Absent the parties’ agreement, resort to a private sale as a means of selling the property in a partition action is disapproved. See Collins v. Collins, 406 So.2d 1233, 1233 (Fla. 2d DCA 1981). The Carlsen court explained the reason for allowing the parties to agree to a private sale as follows:
Commonly the trial judge affords the parties an opportunity to negotiate between themselves or arrange a private sale to a third party. We find no fault with this procedure. On the contrary, much can be said for any reasonable arrangement whereby formerly married parties are enabled to conserve their investments and property interests.
Id. at 133. In Carlsen, we concluded that if a trial court follows this procedure, two requirements must be met. First, “the judgment must fix some reasonable deadline for such arrangements to be completed,” and any private sale is subject to approval by the court. Id. at 133-34. Second, the judgment must provide that “if disposition of the [property] is not amicably resolved within a specified reasonable period of time,” judicial sale of the property shall take place in accordance with chapter 64. Id. at 134; see also Sullivan v. Sullivan, 363 So.2d 393, 395 (Fla. 2d DCA 1978) (noting same); Blackmon v. Blackmon, 969 So.2d 426, 429-30 (Fla. 1st DCA 2007) (noting same). This procedure “affordfs] the parties a fixed reasonable time within which to make a voluntary sale of all or part of such property for cooperative maximization of the sales price.” In re Marriage of Jones, 357 So.2d 439, 442 (Fla. 2d DCA 1978). The rationale for requiring a reasonable deadline by which the voluntary sale must occur is to give the parties an opportunity to secure a higher sales price than they might at a judicial sale, while ensuring finality in the event a private sale does not occur. See id.
*508 Although the courts have developed this third remedy in the context of dissolution proceedings, its use is not limited to marital disputes. Indeed, this court implicitly recognized the propriety of such an extrastatutory procedure in at least one partition suit predating Carlsen that was not associated with a dissolution proceeding. See O’Malley v. McMullen, 294 So.2d 379, 380, 382 (Fla. 2d DCA 1974) (explaining that “[t]he parties had a right to agree as between themselves” with regard to an action for partition in which the trial court entered a stipulated judgment of partition that provided “[t]hat in the absence of amicable agreement to the contrary, the property described in the Complaint shall be sold” by judicial sale on a specified date).
To summarize, based on the uncontested allegation that the property was “not reasonably susceptible to an equitable physical division,” the trial court in this case had three options for ordering a partition sale: (1) a judicial sale by public auction under section 64.071, (2) a private sale conducted by the clerk or a magistrate under section 64.061(4), or (3) a private sale based on the stipulation of the parties in accordance with Carlsen. In the partition judgment entered in December 2013, the trial court reasonably and properly selected the third option.

B. The Trial Court Erred by Imposing an Unauthorized Procedure for Partition

Although the extent to which the parties stipulated to the provisions of the partition judgment is not clear from our limited record, it is undisputed that they requested the opportunity to negotiate a private sale as their preferred alternative to a judicial sale. On this basis, the trial court was authorized to order the procedure for private sale approved in Carlsen. This is exactly what the trial court did in the partition judgment. In its judgment, the court allowed approximately six and one-half months for the parties to negotiate a private sale—by requiring them to list the property on the open market and authorizing them to either sell the property to a third party or to negotiate a buyout with each other. Consistent with the teaching of Carlsen, the trial court provided that if the property had not been sold by June 30, 2014, it would order a judicial sale in accordance with section 64.071.
The judicially created procedure approved in Carlsen allows the trial court to give the parties a fixed, “reasonable period of time” to “negotiate between themselves or arrange a private sale to a third party.” Carlsen, 346 So.2d at 133-34. Although any disposition negotiated by the parties is ultimately subject to the court’s approval, the key to this alternative procedure is that any private disposition is the product of the parties’ agreement. The trial court was therefore correct to deny Ms. Marks’ motion to compel Mr. Stein to accept her offer after Mr. Stein refused to list the property for sale. Consistent with Carlsen, nothing in the partition judgment gave either party a basis to compel the other to accept his or her bid for the property. Instead, the judgment appropriately contemplated the opportunity for a private sale on the open market, whereby the parties could voluntarily negotiate a sale either between themselves or to a third party within a period of six and one-half months. But instead of ordering the parties to follow the procedure in the partition judgment and to engage the named real estate agent to list the property, the trial court in its January 21 order deviated from its charted course and imposed the January 24 deadline, by. which the parties were to submit their highest bids to one another.
*509 The January 21 order initiated an expedited bidding process between the parties that was directly at odds with Carlsen. The January 21 order discouraged, rather than encouraged, “cooperative maximization of the sales price.” In re Marriage of Jones, 357 So.2d at 442. First, the order required the parties to submit their bids within seventeen days. An allowance of a little over two weeks was not a reasonable period of time for a private disposition of the property. Second, the order failed to accommodate the possibility of third-party buyers. Because the property had not been listed for sale, the deadline also forced the parties to make hastily conceived offers to one another without any idea about what a third party might be willing to pay for the property. And the short deadline created a scenario where either party might be forced to sell his or her interest in the property for less than he or she was willing to pay the other, which is precisely what happened.[2] Then, in entering its February 5 and March 19 orders, the trial court transformed what should have been an opportunity for the parties to voluntarily negotiate a sale on the open market into a forced buyout between one another. Because this procedure was not authorized by chapter 64 or Carlsen and its progeny, the trial court erred in entering these orders.
Finally, we have not overlooked Mr. Stein’s argument that the trial court’s orders forcing Ms. Marks to accept his offer of $601,755.33 did not prejudice Ms. Marks because Mr. Stein paid her “over $150,000 above the appraised value” for the property. The property was appraised for $450,000 in December 2013. As Ms. Marks points out, the submission by both Mr. Stein and an unrelated third party just one month later of offers significantly higher than the appraised value indicated that the property’s value was rapidly increasing. The facts strongly suggested that cutting short the period previously allowed for the parties to negotiate a private sale of the property would interfere with the likelihood that the parties would ultimately obtain a private sale at a price higher than Mr. Stein’s winning bid.
V. CONCLUSION
For the foregoing reasons, we reverse both orders on appeal. On remand, the trial court is directed to enter an order vacating and cancelling the quitclaim deed executed by Ms. Marks to Mr. Stein in exchange for the return by Ms. Marks of the monies paid to her toward the purchase price by Mr. Stein, if any. The trial court is authorized to enter such other orders as may be necessary and appropriate to unwind Mr. Stein’s purchase of the property. In addition, the trial court may give the parties the option to stipulate to an opportunity to negotiate a private sale in accordance with Carlsen. If the parties agree to this procedure, the court must enter an amended final judgment of partition that describes each party’s interest in the property, fixes a reasonable deadline for negotiating a private sale, and provides that any sale after the expiration of the deadline must take place in accordance with chapter 64. Arrangements for a private sale must be agreed to by the parties, and any such agreement will be subject to the trial court’s approval. If the parties do not opt for a voluntary private sale, the trial court must enter an amended final judgment that describes each party’s interest in the property and orders sale of the property in accordance with chapter 64.
*510 Reversed and remanded for further proceedings consistent with this opinion.
VILLANTI, C.J., and KHOUZAM, J., concur.

. The trial court ruled that it would determine the parties’ claims for credits and set-offs with regard to the distribution of the sales proceeds at a later date.

. Shortly after the 5:00 p.m. deadline on January 24, and after both parties had submitted their bids, Ms. Marks submitted an "amended notice” increasing her bid to $605,000.